UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
RENATE MITCHELL JAMES                          :
o/b/o A.M.B., *pro se*,                        :
                                               :   **MEMORANDUM & ORDER**
                              Plaintiff,       :   10-CV-1172 (DLI)
                                               :
              -against-                        :
                                               :
MICHAEL J. ASTRUE, Commissioner                :
of Social Security,                            :
                                               :
                              Defendant.       :
----------------------------------------------------------- x
**DORA L. IRIZARRY, U.S. District Judge:**

On August 31, 2008, *pro se* Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on behalf of her son, A.M.B., who was then three years old. (R. 32.) On December 12, 2008, the Social Security Administration denied the claim. (R. 36.) On December 20, 2008, Plaintiff requested a hearing. (R. 33.) On July 27, 2009, Plaintiff appeared, without counsel, and testified at the hearing before Administrative Law Judge Ronald R. Bosch ("ALJ"). (R. 20.) By decision dated September 19, 2009, the ALJ concluded that A.M.B. was not disabled within the meaning of the Social Security Act (the "Act") since August 31, 2008, the date Plaintiff's application was filed, and, therefore, not entitled to SSI. (R. 19.) On January 14, 2010, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. (R. 1.) On March 10, 2010, Plaintiff filed the instant action seeking judicial review of the Social Security Administration Commissioner's decision denying benefits to A.M.B. On October 13, 2011, the Commissioner moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of that determination. For the reasons set forth below, the Commissioner's motion is granted and the Commissioner's decision is affirmed.

1

## BACKGROUND

I.  **Non-medical and Testimonial Evidence**

   *A.  Questionnaires and Written Reports*

On August 31, 2008, Plaintiff filed an application for SSI benefits on behalf of her son, A.M.B., who was born on January 26, 2005 in the United States. (R. 32.) On September 8, 2008, as a part of her initial application, Plaintiff completed a function report and indicated that A.M.B. could not print letters or write his first name. (R. 52, 57.) Also on September 8, 2008, R. Zientarski interviewed A.M.B. and completed a Disability Report (Form SSA-3367) that indicated A.M.B. was observed playing with a toy car, was well behaved and did not display any breathing problems. (R. 62, 63.) Plaintiff completed a Disability Report (Form SSA-3820) for A.M.B. that indicated A.M.B. suffered from hemophilia and asthma, and listed Dr. Fazul Yusuf as A.M.B.'s treating physician. (R. 64, 65.) Plaintiff also indicated in the report that A.M.B. was prescribed Albuterol, Benefix and Factinine for his illnesses. (R. 67.)

In another Disability Report completed by Plaintiff on December 16, 2008, Plaintiff indicated that A.M.B. was treated on a weekly basis with intravenous medication to prevent internal bleeding and, without this treatment, A.M.B.'s joints became inflamed and painful. (R. 79.) Plaintiff also indicated that A.M.B. has been treated with steroids on one occasion, which "helped a bit that time." (*Id.*)

   *B.  Testimonial Evidence*

At a hearing held before the ALJ on July 27, 2009, Plaintiff testified that her son was disabled because of his hemophilia, which caused him to bleed even if he just was bumped. (R. 27.) Plaintiff estimated that A.M.B. bled once or twice a week, and she gave him intravenous

medicine to stop the bleeding three times a week. (R. 28.) Plaintiff explained that this medication helped to control the swelling in A.M.B.'s right knee, which suffered from internal joint bleeding. (*Id.*)

Plaintiff testified that A.M.B. was not a discipline problem, ate normally, slept normally and generally was able to use his body normally. (R. 28, 29.) Plaintiff stated that A.M.B.'s only limitation was in playing sports, but that she "ha[s] to be constantly watching him every minute of every day." (R. 30.) Plaintiff also stated that she had to carry A.M.B. when his knee was bleeding. (R. 29.) The medication she administered to A.M.B. three times a week sometimes bothered him, (R. 30).

## II. Medical Evidence

### A. *Treating Physicians*

A.M.B. was treated by two doctors: (1) Dr. Fazul Yusuf, a Pediatrician and (2) Dr. Suchitra Acharya, a Pediatric Hematologist. Dr. Yusuf saw A.M.B. every three months from birth, to treat A.M.B. for hemophilia. (R. 85.) Dr. Acharya, a Pediatric Hematologist at the Comprehensive Hemophilia Treatment Center, saw A.M.B. twice a year from birth for comprehensive visits and as needed for bleeding. (R. 102, 110.)

On August 7, 2008, Dr. Yusuf completed a "Care Required for Sick/Disabled Household Member" form and indicated that A.M.B. was diagnosed with "Severe Factor IX Deficient Hemophilia" and, as a result, could not go to the toilet, wash, bathe, prepare meals or feed himself, without assistance. (R. 83.) Additionally, Dr. Yusuf provided a letter recommending that Plaintiff remain at home with A.M.B. to attend to his needs. (R. 84.)

On October 15, 2008, Dr. Yusuf completed a medical report from the New York State Office of Temporary and Disability Assistance, Division of Disability Determinations. (R. 85-89.) Dr. Yusuf indicated that A.M.B. received medical treatment every three months for hemophilia and was clinically stable at that time. (R. 85.) Dr. Yusuf reported that A.M.B.'s illness was life-long and that his only limitation was a prohibition from playing contact sports. (R. 86.) Dr. Yusuf also indicated that A.M.B. had age appropriate fine/gross motor skills, sensory abilities, communication skills, cognitive skills and social/emotional skills. (R. 86, 87.) Dr. Yusuf noted that A.M.B. had never had a blood transfusion, but was subject to non-traumatic spontaneous joint bleeding. (R. 87, 88.)

On May 14, 2009, Dr. Acharya completed a Comprehensive Examination report for A.M.B. (R. 102.) Dr. Acharya indicated that A.M.B. has a history of hemophilia since birth. (*Id.*) Dr. Acharya diagnosed A.M.B. with "Severe Factor IX Deficient Hemophilia," and prescribed Benefix and Amicar. (*Id.*) A.M.B.'s right knee was reported to be two inches larger than the left knee due to Plaintiff's failure to administer the Benefix medication properly. (R. 103.) On May 14, 2009, Dr. Richard Lipton completed a Range of Motion Report indicating that, according to Plaintiff, A.M.B. recently had bleeding in his right ankle and knee, and had been refusing his medication. (R. 105.) Dr. Lipton also noted minimal swelling in A.M.B.'s knee. (*Id.*)

On July 23, 2009, Dr. Acharya completed a Medical Report for the Social Security Administration regarding A.M.B.'s diagnosis and treatment. (R. 110-113.) Dr. Acharya indicated that A.M.B. was diagnosed with hemophilia and received Benefix twice a week to prevent bleeding. (R. 110.) Dr. Acharya also noted that A.M.B. suffered from "bleeding in [his]

4

joints and muscles, skin and mouth bleeds spontaneously and bleeds with trauma." (*Id.*) Dr. Acharya further reported that A.M.B. responded to treatment and had been hospitalized only once in his lifetime, a month after birth for "jerky movements of limbs." (R. 111.) Dr. Acharya asserted that A.M.B. did not have any problems in the following areas: motor abilities, cognitive/communicative development, social development, personal development, concentration and pace of task completion, and responding appropriately to stimuli. (R. 111, 112.) Dr. Acharya indicated that A.M.B.'s right knee was bigger than the left as a result of recurrent bleeds into the joint. (R. 111.)

Dr. Acharya also completed a Functional Assessment for Children for A.M.B. on July 23, 2009. (R. 114-116.) Dr. Acharya based his findings on A.M.B.'s impairment of his swollen right knee due to bleeding into the joint because of A.M.B.'s chronic illness. (R. 114.) Dr. Acharya described this impairment as "moderate if he has a joint bleed." (*Id.*) Dr. Acharya indicated no evidence of limitation in the following categories: (i) cognitive/communicative development, (ii) motor development, (iii) social development, (iv) personal development, and (v) concentration, persistence or pace. (R. 115, 116.)

### B. *Consulting Physician Reports*

In addition to the above mentioned treating physicians, two consultants provided reports on A.M.B.'s condition. A letter dated March 24, 2008 indicated that A.M.B. was seen by Dr. Manwani, a Pediatric Hematologist, for an annual comprehensive examination. (R. 81.) Dr. Manwani diagnosed A.M.B. with "Severe Factor IX Deficient Hemophilia, No Inhibitor Detected." (*Id.*) Dr. Manwani also recommended a treatment plan including Benefix and Factor Nine Concentrate, administered intravenously. (*Id.*)

On December 11, 2008, S. Imam, a state agency medical consultant specializing in pediatrics, completed a Childhood Disability Evaluation Form for A.M.B., and indicated that A.M.B.'s impairments were asthma and hemophilia. (R. 95.) Although the impairments were severe, they did not meet, medically equal or functionally equal any disability listed in the regulatory "Listing of Impairments." *See* 20 C.F.R. § 416.926(a); (R. 94.) Mr. Imam found that A.M.B. had no limitations in the following categories: acquiring and using information, attending to and completing tasks, interacting and relating with others, and caring for himself. (R. 96, 97.) A less than marked limitation[1] was found regarding A.M.B.'s ability to move about and manipulate objects, and his health and physical well being. (R. 97.) Mr. Imam reported that it was likely A.M.B. would have only a few limitations at most, because A.M.B. had no emergency room visits or hospital admissions in over a year, his asthma was being treated with medication and his hemophilia was clinically stable. (R. 99.)

## III. The ALJ's Decision

The ALJ found that the first and second requirements of demonstrating childhood disability were met because (1) A.M.B. had not engaged in substantial gainful activity since the application date, and (2) A.M.B. had two severe impairments, hemophilia and asthma, which caused more than minimal functional limitations. (R. 12.)

When making the determination regarding the third requirement, the ALJ found that A.M.B. did not have an impairment or combination of impairments that met, medically equaled or functionally equaled a disability in the Listing of Impairments. (*Id.*) The ALJ reviewed the medical opinions of Dr. Yusuf and Dr. Acharya, and gave them both substantial weight. (R. 14.)

---

[1] A marked limitation is a physical or mental impairment that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i).

6

Furthermore, the ALJ considered all relevant evidence and reviewed all six functional equivalence domains. (R. 14-19); *see also* 20 C.F.R. § 416.926a(a)-(b).

The ALJ found that A.M.B. did not have any limitations in the first three domains. (R. 14-16.) In the first domain, acquiring and using information, the ALJ relied on Dr. Acharya's medical opinion that there was no evidence of delay in cognitive or communicative development. (R. 111, 115.) Moreover, A.M.B. had normal speech and did not seem to have difficulty understanding others. (R. 15.) Next, in the second domain, attending and completing tasks, the ALJ relied on Dr. Acharya's medical opinion that there was no evidence of concentration, persistence or pace developmental delays. (R. 112, 116.) Finally, the ALJ found that A.M.B. had no limitations in the third domain, ability to interact and relate with others, based on Dr. Achayra's medical opinion that there was no evidence of any social or personal developmental delays as well as Plaintiff's own testimony that A.M.B. played well with others and had no discipline problems. (R. 16, 28, 112, 115.)

The ALJ found that A.M.B. had a less than marked limitation in the other three domains. The ALJ's finding of a less than marked limitation in the fourth domain, moving about and manipulating objects, was based on Dr. Acharya's medical opinion that when A.M.B.'s knee was swollen, he had moderate restrictions when playing. (R. 17, 111.) The ALJ's finding of a less than marked limitation in the fifth domain, caring for himself, was supported by both Dr. Yusuf's and Dr. Acharya's medical opinions. (R. 18.) The doctors reported that, although A.M.B. had to rely on his mother to administer his weekly intravenous medication, he was able to dress, ambulate, and move about without assistance. (R. 83, 86, 115.) Finally, the ALJ's finding of a less than marked limitation in the sixth domain, health and physical well being, was

7

supported by Dr. Yusuf's and Dr. Acharya's medical opinions that A.M.B. did not suffer from any side-effects from the medication and never had a blood transfusion. (R. 19, 86, 114.)

## **LEGAL STANDARD**

### I. Standard of Review

The district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the Commissioner's decision, the Court need not determine *de novo* whether a claimant is disabled. *See Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). Rather, the Court's inquiry is limited to the question of whether the Commissioner applied the correct legal standard in making the determination and, if so, whether such determination is supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lamay v. Astrue*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). The court must be satisfied "'that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). An ALJ's determination must

include "a sufficient explanation of [her] reasoning to permit the reviewing court to judge the adequacy of [her] conclusions; moreover, the courts in this Circuit have repeatedly held that an ALJ's failure to acknowledge relevant evidence or explain its implicit rejection is plain error." *Pacheco v. Barnhart*, 2004 WL 1345030, at *4 (E.D.N.Y. June 14, 2004) (internal citations and quotation marks omitted).

"If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even where substantial evidence supporting the claimant's position also exists." *Hernandez v. Barnhart*, 2007 WL 2710388, at *7 (S.D.N.Y. Sept. 18, 2007) (citing 42 U.S.C. § 405(g)). "The role of the reviewing court is therefore 'quite limited and substantial deference is to be afforded the Commissioner's decision.'" *Id.* (quoting *Burris v. Chater*, 1996 WL 148345, at *3 (S.D.N.Y. Apr. 2, 1996)).

Although Plaintiff has not advanced any arguments on appeal, the court is mindful that, "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted). Accordingly, the court will construe plaintiff's pleadings and papers "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## II. Governing SSA Regulations for Defining Childhood Disability

To qualify for SSI benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Pollard v. Halter*, 377 F.3d 183, 189 (2d

9

Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)). The SSA has provided a three-step sequential analysis to determine whether a child is eligible for SSI benefits on the basis of his or her disability. 20 C.F.R. § 416.924(a); *see also Pollard*, 377 F.3d at 189.

First, the ALJ must consider whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). "Second, the ALJ considers whether the child has a 'medically determinable impairment that is severe,' which is defined as an impairment that causes 'more than minimal functional limitations.'" *Pollard*, 377 F.3d at 189 (quoting 20 C.F.R. § 416.924(c)). Third, "if the ALJ finds a severe impairment, he or she must then consider whether the impairment 'medically equals' or . . . 'functionally equals' a disability listed in the regulatory 'Listing of Impairments.'" *Id.* (quoting 20 C.F.R. § 416.924(c)-(d)). Under the third step, to demonstrate functional equivalence to a Listing of Impairments disability, the child must exhibit "marked" limitations in two of six domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). These six domains consider a child's: (1) ability to acquire and use information; (2) ability to attend and complete tasks; (3) ability to interact and relate with others; (4) ability to move about and manipulate objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(a)-(b). A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). In addition, the regulations provide that a limitation is "marked" when standardized testing shows functioning two standard deviations below mean levels. *Id.* An "extreme" limitation exists when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

An "extreme" limitation would be found in a domain where the child scores at least three standard deviations below average. *Id.*

**DISCUSSION**

Here, the ALJ reviewed all of the evidence on the record that supported a finding of disability, and concluded that, although A.M.B. did suffer the severe impairments of hemophilia and asthma, he was not disabled within the meaning of the Act.

The ALJ reviewed the medical evidence from Dr. Yusuf, a pediatrician who had been treating A.M.B. every three months since birth. (R. 13.) Dr. Yusuf reported that, although A.M.B. could move well without difficulty and dress himself, he required help bathing, using the toilet, preparing meals and feeding himself. (R. 13, 83.) This assessment by Dr. Yusuf was made in 2008, when A.M.B. was just three years old. (R. 83.) The ALJ stated that, "[w]hile, Dr. Yusuf did not explain whether this was just a matter of the claimant's young age or his condition, he did report that all of his functioning was age-appropriate." (R. 13.) The ALJ's review of all the documentation from Dr. Yusuf is consistent and adequately addressed all evidence of disability. *See Pagan on Behalf of Pagan v. Chater*, 923 F. Supp. 547, 556 (S.D.N.Y. 1996) ("[T]he ALJ is not required to reconcile every ambiguity and inconsistency of medical testimony . . . ") (citing *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984)).

The ALJ also reviewed the medical evidence from Dr. Acharya, a pediatric hematologist who had also been treating A.M.B. since birth. (R. 13.) Dr. Acharya reported that A.M.B. consistently responded well to treatment and that his physical condition was within normal limits. (R. 13, 111, 112.) Dr. Acharya reported no limitations except that, when A.M.B.'s knee was swollen, it would moderately affect his performance of age appropriate activities. (R. 13, 114.)

This limitation alone does not support a finding of disability within the meaning of the Act. The ALJ gave substantial weight to the medical opinions from both doctors in accordance with the treating physician rule. *See Manatovani v. Astrue*, 2011 WL 1304148, at *2 (E.D.N.Y. Mar. 31, 2011) ("If the treating source's opinion regarding the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record, the opinion receives controlling weight." (internal citations and quotation marks omitted)).

The ALJ also relied on the testimony and reports from Plaintiff. Plaintiff alleges that A.M.B. is disabled due to lifelong hemophilia. At the hearing held on July 27, 2009, Plaintiff testified that there were a lot of limitations associated with A.M.B.'s hemophilia, specifically, that "he can't do like sports like . . . your normal four year old[] would be able to do." (R. 30.) However, Plaintiff also testified that A.M.B. had no psychiatric problems, behavioral problems, or problems playing with other children, eating, using his body normally, sleeping or going to the bathroom. (R. 27-30.) The ALJ relied on the lack of functional limitations reported by Plaintiff as well as, "[t]he medical evidence from both Dr. Yusuf and Dr. Acharya confirm[ing] only mild restrictions in functionality" to conclude that A.M.B. was not disabled within the meaning of the Act. (R. 14.) The ALJ's decision is supported by substantial evidence and, therefore, the Defendant's motion is granted.

## **CONCLUSION**

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is granted and the ALJ's decision is affirmed.

SO ORDERED.

Dated: Brooklyn, New York
August 8, 2011

/s/
DORA L. IRIZARRY
United States District Judge